UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JOSEPH R. LAFARGE, an individual and RHONDA LAFARGE, an individual<br><br>Plaintiff,<br><br>v.<br><br>GMAC MORTGAGE, LLC, a corporation; and THE BANK OF NEW YORK MELLO TRUST COMPANY, NATIONAL ASSOCIATION f/k/a The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., as Trustee for RAMP 2004-RS3,<br><br>Defendants. | Civil Action No.:<br><br>_____ |

## COMPLAINT

**COME NOW** the Plaintiffs Joseph and Rhonda Lafarge (hereinafter "Plaintiffs"), by and through their attorneys of record, and file their Complaint as follows:

1. This is a lawsuit brought under Alabama state law related to wrongful conduct by the Defendants which has culminated in a threat of a foreclosure against the home of Plaintiffs this month.

1

2. This suit is also brought under federal law, including the Fair Debt Collection Practices Act ("FDCPA") and the Truth in Lending Act ("TILA").

3. The Plaintiffs have the money to reinstate this loan but have been unable to get the Defendants to properly credit payments and to give an accurate reinstatement amount which prevents Plaintiffs from saving their home from a foreclosure this month (July 26, 2012).

## PARTIES

4. The Plaintiffs Joseph and Rhonda Lafarge are Alabama residents who live in Madison County, Alabama, which is in this judicial district.

5. The Defendant GMAC Mortgage, LLC ("GMAC") is a foreign mortgage company which allegedly owned, serviced, or was otherwise involved in the mortgage loan of Plaintiffs. The principal place of business of GMAC is in Pennsylvania and GMAC is incorporated outside of Alabama.

6. The Defendant The Bank of New York Mellon Trust Company, National Association (f/k/a The Bank of New York Trust Company, N.A., as successor to JPMorgan Chase Bank N.A., as Trustee for RAMP 2004-RS3) ("Bank of New York") is a foreign company which allegedly owned, serviced, or was otherwise involved in the mortgage loan of Plaintiffs. The principal place of business of Bank of New York is in California and Bank of New York is incorporated outside of Alabama.

## JURISDICTION

7. Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiffs in Alabama.

8. Subject matter jurisdiction exists under 28 U.S.C. Sections 1331 and 1332.

9. The Plaintiffs are citizens of Alabama.

10. Defendants are not citizens of Alabama.

11. The amount in controversy is over $75,000.

## VENUE

12. Venue is proper in this judicial district under 28 U.S.C. Section 1391(a)(2) as "a substantial part of the events or omissions giving rise to the claim" asserted occurred in this judicial district.

## STATEMENT OF FACTS

13. Defendants acted as agents for each other in all the actions taken that relate in any way to Plaintiffs.

14. The Plaintiffs suffered tornado damage in April 2011 and the loss of income which put the Plaintiffs in a difficult financial position.

15. Plaintiffs fell behind on their mortgage loan and requested an opportunity to reinstate the loan and to modify the loan.

16. Defendants have misapplied payments on multiple occasions contrary to the representations made to Plaintiffs by Defendants.

17. Plaintiffs have disputed the actions of the Defendants in writing and over the phone on multiple occasions.

18. The Defendants have sent contradictory and nonsensical statements and correspondence to Plaintiffs concerning the loan of Plaintiffs[1].

19. For example, a letter dated July 5, 2012, from the law firm representing the Defendants states that the reinstatement amount is $14,705.79.

20. This is made up of a number of alleged charges and missed payments which are incorrect.

21. One prime example is "Late Charges" which is alleged in the July 5, 2012, letter to be in the amount of $3,944.34.

22. Given the relatively small amount of each late charge, the Plaintiffs would have had to have been late approximately 75% of the life of the loan without ever paying one late fee.

23. Plaintiffs have not been late enough to remotely justify the amount of $3,944.34.

24. A March 19, 2012, statement from Defendants shows late charges of "2,662.60."

---

[1] It appears only Plaintiff Joseph Lagarge is on the note but the Defendants have treated both Joseph and Rhonda Lafarge as owing the debt and the Defendants' actions concern the home of both Joseph and Rhonda Lafarge so they are both party Plaintiffs in this case.

4

25. There is no explanation how the "late charges" could go from $2,662.60 to $3,944.34 in the short time between March 10, 2012, and July 9, 2012.

26. Defendants have misapplied and improperly put payments towards late fees instead of the regularly scheduled payments as required by the Note and/or Mortgage.

27. Defendants have represented in writing (letter dated June 13, 2012) that no foreclosure will occur if a review of a loan modification package has begun.

28. The loan modification package was properly and timely sent in but yet the Defendants have continued to threaten a foreclosure on July 26, 2012.

29. Defendants have also admitted and recognized that the foreclosure sale should not occur but refused to cancel the embarrassing and harassing newspaper advertisements that have put Plaintiffs in a negative light and invaded their privacy.

30. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

> (a) There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.
> (b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

31. Plaintiffs took out a consumer debt – a home loan and such loan was secured by a mortgage on the property owned by Plaintiffs.

32. The Defendants are considered "Debt Collectors" under the Fair Debt Collection Practices Act (FDCPA) as Defendants bought the loan or were assigned the loan after it was allegedly in default.

33. The threatened foreclosure was and is illegal and constitutes a threat to take action which Defendants are not legally entitled to take.

34. Defendants improperly applied, charged, or otherwise handled expenses, charges, fees, payments, and the loss mitigation process (including loan modification) with Plaintiffs.

35. Defendants did not give proper notice of the foreclosure or acceleration to Plaintiffs.

36. Defendants did not conduct all required pre-foreclosure counseling and loss mitigation efforts as required under the law and the documents controlling the conduct of Defendants, including servicing requirements and regulations.

37. Transfers were allegedly made ultimately resulting in Defendants allegedly having the loan and/or the mortgage.

38. Plaintiffs allege that all such transfers were improper, void, and without legal effect.

39. The note and mortgage were improperly split from each other, which results in the mortgage being void.

40. With the mortgage void, there is no right to foreclose.

41. Defendants lack standing to foreclose in that they have no present legal right to enforce the security agreement.

42. All Defendants' employees and agents acted within the line and scope of their employment and/or agency relationship and all Defendants acted as agents for each other.

### Damages Due to Defendants' Misconduct

43. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have and will suffer massive damages and injuries.

44. These damages include great mental anguish, damage to reputation, economic damages, and Plaintiffs claim from Defendants all damages allowable under the law.

## COUNT ONE

## NEGLIGENCE

45. Plaintiffs reallege all paragraphs as if set out here in full.

46. Defendants negligently threatened to conduct a foreclosure sale on Plaintiffs' property.

47. Defendants negligently handled, applied, imposed, created, serviced, and processed payments, charges, fees, expenses, loss mitigation efforts (including loan modifications) and other aspects of Plaintiffs' loan and mortgage.

48. As a direct result of the said negligence, Plaintiffs were injured and damaged as alleged above and have suffered mental anguish, economic injury and all other damages allowed by law.

49. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their negligence.

## COUNT TWO

## WANTONNESS

50. Plaintiffs reallege all paragraphs as if set out here in full.

51. Defendants acted with reckless indifference to the consequences, and consciously and intentionally threatened to conduct a wrongful foreclosure sale on Plaintiffs' property.

52. Defendants wantonly handled, applied, imposed, created, serviced, and processed payments, charges, fees, expenses, loss mitigation efforts (including loan modifications) and other aspects of Plaintiffs' loan and mortgage.

53. These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for Defendants.

54. Defendants knew that these actions were likely to result in injury to Plaintiffs including financial and emotional injuries and mental anguish.

55. As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to its wantonness as well as punitive damages.

## COUNT THREE

## BREACH OF CONTRACT

56. Plaintiffs reallege all paragraphs as if set out here in full.

57. Defendants breached the contract with Plaintiff and thereby caused Plaintiff incidental and consequential damages (including mental anguish).

58. This includes the improper accounting, charges, payment processing, loss mitigation efforts and the foreclosure process itself.

59. Plaintiffs claim all damages allowable under law.

## COUNT FOUR

## NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, AND/OR TRAINING

60. Plaintiffs reallege all paragraphs as if set out here in full.

61. Defendants hired, supervised, and/or trained incompetent agents or employees who committed some or all of the wrongful acts set forth in this Complaint.

62. Defendants knew or should have known of the incompetence of these agents or employees.

63. Defendants were negligent or reckless in their hiring, supervision, and/or training which led as a direct and proximate result to the damages suffered by Plaintiffs.

64. Plaintiffs claim all damages allowable under law.

## COUNT FIVE

## INTENTIONAL AND/OR MALICIOUS CONDUCT

65. Plaintiffs reallege all paragraphs as if set out here in full.

66. All actions of Defendants were made intentionally and/or malicious and led to the damages of Plaintiffs as a direct proximate result.

67. Plaintiffs claim all damages allowable under law.

## COUNT SIX

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

68. Plaintiffs reallege all paragraphs as if set out here in full.

69. Alabama law recognizes Plaintiffs' right to be free from invasions of privacy and Defendants violated Alabama state law as described in this Complaint.

70. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

71. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

72. Defendants and/or their agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiffs' privacy.

73. Defendants and their agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiffs' right to privacy.

74. Plaintiffs had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, private concerns or affairs, and private financial information.

75. The conduct of Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiffs, resulted in multiple intrusions and invasions of privacy by Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

76. As a result of such intrusions and invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendants.

77. All acts of Defendants and their agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendants are subject to punitive damages.

## COUNT SEVEN

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

78. Plaintiffs reallege all paragraphs as if set out here in full.

79. The acts and omissions of Defendants and their agents constitute numerous and multiple violations of the FDCPA, including, but not limited to 15 U.S.C. § 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

80. As a result of the violations of the FDCPA, Plaintiffs are entitled to statutory damages, actual and compensatory damages, and reasonable attorney's fees and costs from the Defendants.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs having set forth their claims for relief against Defendants, respectfully pray of the Court as follows:

   a. That Plaintiffs recover against Defendants a sum to be determined by a jury of their peers in the form of actual, statutory, nominal, and punitive damages;

   b. That Plaintiffs recover reasonable attorney's fees, costs, expenses;

   c. That the foreclosure sale be stopped; and

   d. That Plaintiffs have such other and further and proper relief as the Court may deem just and proper.

Respectfully Submitted,

*/s/ John G. Watts*

**John G. Watts (ASB-5819- T82J)**
**M. Stan Herring (ASB-1074-N72M)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiffs**

**PLAINTIFFS DEMAND A TRIAL BY JURY**

**Serve defendants via certified mail at the following addresses**:

GMAC Mortgage, LLC
c/o CSC Lawyers Incorporating Srv, Inc.
150 S. Perry Street
Montgomery, Alabama 36104

The Bank of New York Mellon Trust Company, N.A.
c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104